532

### In re HOLLYWOOD JOCKEY CLUB, Inc.

#### No. 1760-M.

District Court, S. D. Florida,
Miami Division.

July 8, 1944.

R. R. Saunders, of Fort Lauderdale, Fla., and Clifton D. Benson and Benjamin E. Carey, both of Miami, Fla., for Trustee in Bankruptcy.

W. G. Ward, of Miami, Fla., for James M. Donn.

Charles A. Morehead, of Miami, Fla., for T. E. Bragg.

H. U. Feibelman, of Miami, Fla., and Charles H. Warwick, Jr., of West Palm Beach, Fla., for creditors.

James E. Calkins, of Miami, Fla., for Marie L. Horning.

HOLLAND, District Judge.

On May 25, 1944, Robert L. Weed Architect, Inc., filed its petition for review of the action taken by the Referee in accepting the bid of James Donn for the purchase of the assets of the bankrupt. On May 25, 1944, T. E. Bragg filed his petition for a review of the said action of the Referee. On May 26, 1944, J. J. Southerland and the Dulany-Vernay Company, a corporation, filed their petition for review of the same orders of the Referee. On June 7, 1944, the Referee filed his certificate of review certifying to the District Court the matters to be reviewed. Said petitions were set down for hearing, and were heard before the Court with all counsel present on July 3, 1944. The matter was taken under advisement.

A voluntary petition in bankruptcy under Chapter X of the Chandler Act, 11 U.S. C.A. § 501 et seq., was filed in this Court by Hollywood Jockey Club, Inc., on February 11, 1939. Trustees were appointed, and over a period of time, and until the order of adjudication in bankruptcy on October 22, 1942, the affairs of this now adjudicated bankrupt were before this Court. Several plans of re-organization were filed which occasioned many hearings. It was apparent that there was strong probability of one of those plans of re-organization becoming effective. The files in this case reflect effort over this two years and eight months period to carry out the purpose of Chapter X of the Bankruptcy Act, for the securing for the benefit of creditors the re-organization of the affairs of the greatly embarrassed corporate entity, which efforts were of no avail. During all of this period certain lien creditors were clamoring for freedom from the injunction prohibiting foreclosure of their liens, but their rights were preserved during this temporary suspension of their suit for foreclosure of their liens. Finally, on October 22, 1942, Hollywood Jockey Club, Inc., was adjudicated a bankrupt, and the case was referred to the Referee. An injunction in force against the lien creditors remained, but the Court held that lien creditors enjoyed the privilege of seeking to foreclose their liens in the bankruptcy court by summary proceedings. It would appear that no lien creditor has sought up to this time to take advantage of that summary process. One of the lien creditors who has filed his petition for review, to-wit Robert L. Weed Architect, Inc., as late as December 11, 1943, by instrument No. 362, still maintained that the bankruptcy court has no jurisdiction to determine the extent to which that lienor's debt constitutes a claim against the fee simple estate of Marie L. Horning. Robert L. Weed Architect, Inc. is consistent in having maintained this position throughout the bankruptcy proceeding, but notwithstanding that position, the interest of this lien creditor, whose rights have been and are preserved, should not affect the merits of the case when weighing the rights of creditors generally in accepting an offer for the assets of the bankrupt free from liens.

From the adjudication in bankruptcy in October, 1942, no step was taken toward the sale of the assets of the bankrupt until James Donn made an offer on February 15, 1944. The trustee had assets of a very un-

certain nature to offer for sale, and this non-action toward realizing on these assets during this period of time is understandable when the facts of the case are appreciated. To properly appreciate the matter involved in this review, it is well to contrast the situation which confronts the Referee considering the offer now made, and which decision on his part is now under review, with the situation usually dealt with in the sale of assets in a bankruptcy case. The trustee was not offering for sale assets of a tangible nature as to which competitive bids would be considered. The trustee was not the moving actor seeking a sale of assets for the good reason that he had nothing definitely described and tangible which he could offer for sale. During the course of this bankruptcy, practically all the tangible assets had been disposed of. The right to seek permission to operate a racing meet is of an intangible nature, and is dependent upon the possession of facilities to operate a racing plant. The trustee, who represents creditors, contended that the lease from the fee owner was in good standing, but this contention on his part was seriously contested. The trustee was not in a position to offer for sale the rights of the bankrupt as a lessee, which was burdened with liens. Hence, the trustee had a situation forced on him when he had to await an offer from some prospective purchaser which he could submit to the creditors through court channels.

An offer for the purchase of the assets of the bankrupt free from liens was submitted. When this offer was submitted to creditors, the Referee very wisely took steps to arrange for competitive bidding, thereby giving others a chance to bid on the assets which were sought to be obtained by the offeror, and it appears that the bid which was confirmed by the Referee is the best bid, and he accepted it. As I understand the record, it was the only bid for the assets to be sold free of lien.

So we come to consider the offer of Mr. Bragg. The Referee could not compare the amount of $100,000 with the amount of $610,000, because the subject matter, that is that which was to be acquired, is entirely different in the two cases. An equity for which a cash amount is bid, to be sold free of liens, was altogether different from such equity subject to liens. A present attempt to determine the amount which the bankrupt would ultimately obtain after litigation with the fee simple holder and with lienors is speculative. Knowledge of what is claimed by the lessor and by the lienors is not alone sufficient to render it non-speculative.

The affairs of this bankrupt are such that a sale of its assets free from liens is the only practical character of offer which could be considered. Any proposed buyer who would make an offer subject to liens would do that which Mr. Bragg has done, in seeking to make sure that he would obtain consideration for his money, or something similar thereto, that is in the offer of a bid for sale subject to liens would place conditions which are not practical of fulfillment. A token payment which may be used toward accomplishment is not sufficient. In order to meet the condition, that of obtaining a judicial decree that the lease is valid and presently existing and transferable free from liens, litigation would be necessary. If there was no offer of purchase whatever on a basis of freedom from liens, it might be considered by the bankruptcy court when such offer was to be compared to a winding up of the bankruptcy without any attempted sale. But when compared on its merits to a bona fide offer of cash for a transfer of those intangible assets, free from liens, there can be no question of the wisdom of the Referee's decision.

By certain creditors and T. E. Bragg a written proffer was made before the District Judge on July 3, 1944, during the argument of the certificates of review, whereby said creditors and said Bragg moved the Court to hear and consider the therein recited proffered testimony, or to refer the cause to the Referee with direction to hear and consider such proffered testimony, which was offered to be proved before the Court, or before the Referee, by competent and admissible evidence. Such proffered testimony, even though it was developed through examination of witnesses, would not change or alter the basic facts in regard to a proposed sale of the assets of this bankrupt, as set forth in this opinion-order, and the said proffer is refused and denied.

The orders of the Referee are approved.